LANDY PACKING COMPANY, Northwestern Hide Processing Co., Inc., and Northwestern By-Products Co., Plaintiffs,

v.

AMALGAMATED MEAT CUTTERS AND FOOD HANDLERS OF NORTH AMERICA, AFL–CIO, DISTRICT LOCAL 653–653A, Defendant.

Civ. No. 6–78–353.

United States District Court,
D. Minnesota,
Fourth Division.

May 18, 1979.

Arthur T. Carter, Tate, Bruckner & Sykes, Lincoln, Neb., and Lee Hanson, Hall, Byers, Hanson, Steil & Weinberger, St. Cloud, Minn., for plaintiffs.

Steven D. Gordon and Jan D. Halverson, Robins, Davis & Lyons, St. Paul, Minn., for defendant.

MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

The plaintiff employers operate a meat packing plant located in St. Cloud, Minneso-

ta. The defendant union represents certain production, maintenance and clerical workers at the St. Cloud facility. Plaintiffs and defendant have been parties to a series of collective bargaining agreements covering the years 1972–1976. Based on these agreements, Arbitrator John J. Flagler, in August of 1978, found that the plaintiff employers here were delinquent in making contractually required health and welfare contributions and awarded the defendant union the sum of $64,584.46. The parties had been ordered to arbitrate this dispute by the Honorable Edward J. Devitt of this Court in 1976, at the urging of these same plaintiff employers. In finding for the defendant union, the arbitrator determined that specific employees, among them certain so-called "casual construction" employees, were covered by the terms of the parties' agreements. As a result of this coverage, the arbitrator concluded that the plaintiff employers were delinquent in making the required contributions. In so holding, the arbitrator applied the criteria used by the NLRB in making appropriate unit determinations in order to find that these employees in question were in the unit and therefore covered under the agreements. Alternatively, Arbitrator Flagler, as a matter of contract interpretation, concluded that under the "strict contractual test," the parties intended to have the provisions of their agreements apply to the purported "casual construction" employees, and thus the employers were liable for health and welfare contributions. The arbitrator also relied in part on equitable estoppel principles by finding that these employees should be estopped from challenging an audit conducted by the defendant union. The $64,584.46 award issued by the arbitrator represented delinquent health and welfare contributions, liquidated damages, and attorneys' fees.

After this adverse arbitration award was entered, the plaintiff employers filed a unit clarification petition with the NLRB, seeking to exclude the so-called "casual construction" employees from the bargaining unit. In an order dated March 12, 1979, this Court denied the plaintiff employers' motion to stay this proceeding pending NLRB disposition of the unit clarification petition. As of this date, the NLRB has not disposed of the issues raised by the unit clarification petition.

Shortly after the plaintiff employers filed their unit clarification petition with the NLRB, they brought the present action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[1] to set aside and vacate the award. The defendant union responded with a counterclaim to enforce the arbitration award. Both the plaintiff employers and the defendant union have now moved for summary judgment.

Plaintiffs and defendant have been parties to a series of collective bargaining agreements executed in 1971, 1972 and 1973. Each agreement provides for a grievance arbitration procedure to resolve "any controversy arising over the interpretation and/or adherence to the terms and provisions" of the collective bargaining agreement. The respective collective bargaining agreements also require the employer to contribute specific sums for each employee who has worked 25 or more hours per week to the Minneapolis Retail Meat Cutters and Food Handlers Health and Welfare Fund [the Trust Fund]. More specifically, every one of the working agreements between these parties included a clause stating that the Trust Fund was a part of the agreement, as well as the following provision:

> The Employer hereby agrees to execute and be bound by the existing Trust Agreement, or Joinder Agreement, cover-

---

1. Section 301(a) of the Labor Management Relations Act provides:

   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

   29 U.S.C. § 185(a).

ing the aforesaid Fund and any amendments thereto without delay.

The plaintiff employers never became signatories to the Trust Fund agreement which was executed by other Minnesota meat packing employers. The Trust Fund, incorporated by reference as a part of the collective bargaining agreement, provides in Section 4.6 of the Trust Fund agreement:

Contributions to the Trust Fund shall be due and payable fifteen (15) days following the end of the Employer's established reporting period not to exceed a monthly or 4–5 week period as approved by the Trustees for hours worked during the preceding reporting period for all employees covered under the collective bargaining agreement. The failure of an Employer to pay all amounts due within thirty (30) days following the due date whether willful or otherwise, shall subject the delinquent Employer to a payment of liquidated damages of an additional ten percent (10%) of the amount due plus all costs and reasonable attorneys' fees incurred in connection therewith. Payments and liquidated damages unpaid by the first day of the following month shall be subject to an interest charge of eight percent (8%) per annum.

If legal action is taken to recover the amount due the Trust Fund, the delinquent Employer shall also be required to pay all court costs including reasonable attorneys' fees. In addition to the other provisions as herein set forth, any Employer who is delinquent in his payment to the Trust Fund shall make such Employer primarily liable and responsible to its Employees or Employees' Estates for any claim for benefits accruing to such Employees or Employees' Estate which would otherwise be due such Employees or Employees' Estates under the administration of this Trust Fund. The payment of any and all such claims shall not operate to relieve such Employer from his liability to make payments due the Trust Fund, including the liquidated damage payment.

Any Employer who on more than one occasion during any one year becomes delinquent in its payments to the Trust Fund shall be required to post a bond with the Trustees in an amount equivalent to the total contributions which it was obligated to make during the preceding calendar year.

As a result of finding that the parties had agreed to incorporate the terms of the Trust Fund agreement as a part of their collective bargaining agreements, the arbitrator awarded liquidated damages, interest and attorneys' fees pursuant to Section 4.6 of the Trust Fund Agreement.

The employers' complaint in this action seeks to set aside the award rendered by the arbitrator, alleging that as the employers never signed the Trust Fund agreement, they cannot be held liable because there is not a sufficient "written agreement" within the meaning of Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c).[2] The employers have also con-

---

2. Section 302(c) of the Labor Management Relations Act provides in relevant part:

The provisions of this section [which state that it shall be unlawful for any employer to pay anything of value to any representative of employees or labor organization] shall not be applicable  .   .   .   (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from princi-

pal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the admin-

tended that the arbitrator lacked the authority or power to decide the issue of whether a sufficient "written agreement" existed. Also, the employers submit that the arbitration award fails to draw its essence from the collective bargaining agreements because the arbitrator erroneously determined that the purported casual construction employees were covered by the parties' agreements, and because the arbitrator erroneously awarded attorneys' fees. The union, of course, disputes these contentions, seeks to enforce the award, and also to obtain reasonable attorneys' fees in this action as well.

Under Section 301(a) of the Labor Management Relations Act, federal district courts are empowered to enforce or vacate arbitration awards. Review of such awards is limited, however to determining whether the award "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1970); *General Drivers, Helpers & Truck Terminal Employees, Local No. 120 v. Sears, Roebuck & Company*, 535 F.2d 1072 (8th Cir. 1976). Courts are not empowered to pass upon the merits of a grievance in determining whether an arbitration award should be enforced. *Id.* Basically, a federal district court's duty under Section 301(a) is confined to determining whether the parties "did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he

made." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). In making this determination, the grant of power to the arbitrator "must be broadly construed, with any doubt resolved in favor of the arbitrator's authority." *Kewanee Machinery Division, Chromalloy American Corp. v. Local Union No. 21, Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 593 F.2d 314 at 317 (8th Cir. 1979). The arbitrator is not confined in his deliberations to only the agreements, but "may of course look for guidance from many sources . . . ." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

■ As for the first prong of the plaintiffs' arguments, it is evident that the arbitrator had the authority and exercised it properly in deciding, after the issue was raised by the employers, that there was a sufficient "written agreement" present for purposes of Section 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B). As a general rule, Section 302 prohibits employers from making payments to representatives of employees unless the payments fall within one of the statutory exceptions. One such exception, Section 302(c)(5)(B),[3] allows payments to be made by employers to a trust fund established for the benefit of employees where "the detailed basis on which such payments

istration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate

trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities;
. . . . .

29 U.S.C. § 186(c).

**3.** Congress, in enacting Section 302, was expressing its concern with "corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." *Arroyo v. United States*, 359 U.S. 419, 425–26, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959). However, the exception provided in Section 302(c)(5)(B) was enacted to allow for such contributions while also being safeguarded against the recognized dangers.

are to be made is specified in a written agreement with the employer . . . ." 29 U.S.C. § 186(c)(5)(B). Plaintiffs argue that as they were not signatories to the Trust Fund agreement, there is not a sufficient written agreement and thus plaintiffs cannot be held liable for such delinquencies when there is no obligation to make the contributions under Section 302. It is clear from the collective bargaining agreements that the parties intended to incorporate the terms of the Trust Fund agreement into the collective bargaining agreements. This is certainly a permissible practice. *Hinson v. NLRB*, 428 F.2d 133, 139 (8th Cir. 1970). In Article V of each of the collective bargaining agreements, the parties specified the basis in which health and welfare contributions were to be made. Moreover, Section 302 does not require the employer to be a signatory to the actual trust agreement, only that there be a "written agreement" detailing the basis for payments. *Mechanical Contractors Ass'n v. Huico, Inc.*, 93 LRRM 2329 (W.D.Wash.1976). Under these circumstances, the collective bargaining agreements between these parties, which properly incorporated the terms of the Trust Fund agreement by reference, amount to sufficient written agreements for purposes of Section 302.[4] Parenthetically, it should be noted that the arbitrator certainly could consider pertinent federal court decisions interpreting Section 302 in order to make his decision. *United Steelworkers of America v. Enterprise Wheel Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Thus, the arbitrator here not only had the power to make such a decision, but did so properly as well, in accordance with the intent of the parties as manifested in their collective bargaining agreements.[5]

■ The plaintiff employers also argue that the award fails to draw its essence from the collective bargaining agreements because the arbitrator determined that the so-called "casual construction" employees were covered under the agreements. In making these contentions, plaintiffs assert the same arguments they made before the arbitrator. It is not the role of this Court to become enmeshed in the intricacies of the merits of a dispute properly submitted to arbitration. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1970); *Kewanee Machinery Division, Chromalloy American Corp. v. Local Union No. 21, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 593 F.2d 314 (8th Cir. 1979). The broad arbitration clause which resulted from the parties' bargain specified that arbitration extended to "any controversy" involving adherence to their agreements. As the issue of whether the employers were delinquent in making contractually required health and welfare contributions necessarily requires a determination of what employees were covered under the agreements, it was clearly within the power of the arbitrator to decide the issue of contract coverage. Each of the appendices to the collective bargaining agreements specifies wage rates for particular employees, including a rate for "workers not otherwise classified." The wage rates so specified are articulated by reference to the "Amount of Bracket over

---

4. The plaintiffs' reliance on *Bricklayers, Masons and Plasterers Int'l Union of America, Local Union No. 15 v. Stuart Plastering Co., Inc.*, 512 F.2d 1017 (5th Cir. 1975) to support their position in this litigation that because they are not signatories to the Trust Fund Agreement, they are not bound by its terms, is simply misguided. In *Stuart*, the trust fund instrument was not executed before the collective bargaining agreement was consummated, and thus, could not be incorporated by reference because it was not in existence. *Id.* at 1028. The *Stuart* decision does not aid the employers here.

5. As noted earlier, these plaintiffs, in each of the collective bargaining agreements, agreed "to execute and be bound by the existing Trust Agreement . . . ." Plaintiffs' argument throughout this litigation is premised on the contention that they are not signatories, or never executed, the existing Trust Fund agreement. This is tantamount to arguing that plaintiffs should be relieved of their obligations under the bargain they struck because of their breach of the agreement to execute the Trust Fund agreement. Needless to say, plaintiffs' position is dubious.

Common Labor," which in turn clearly relates to the non-classified worker rate. In light of the testimony at the arbitration hearing that the "casual construction" employees were engaged in common labor, and in fact classified in the maintenance department by the employers, it certainly seems reasonable for the arbitrator to conclude that the parties' course of dealing reflects their intent, and that as a matter of interpretation of the language of the collective bargaining agreements, the employers and union intended the provisions of their agreements to apply to the "casual construction" employees. Moreover, in relying in part on NLRB criteria relating to determinations of the appropriate bargaining unit, the arbitrator was clearly utilizing a permissible source, and this Court cannot say with any assurance that his determination was incorrect.[6] It is also settled that arbitrators can consider equitable defenses such as estoppel in rendering an award, and it does not appear that the arbitrator here abused his authority or power under the circumstances. *International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). Thus, the arbitrator utilized appropriate sources to make the determination of the scope of the coverage of the parties' agreements, and had the power to make such a determination. Therefore, the employers' arguments regarding the applicability of the parties' agreements to the purported casual construction employees must be rejected.

■ The employers also argue that the award of attorneys' fees made by the arbitrator was inappropriate. In making such an award, the arbitrator found that the terms of the Trust Fund agreement, including Section 4.6 of that agreement, were incorporated by reference into the parties' collective bargaining agreements. The arbitrator based his award of attorneys' fees on Section 4.6, which authorizes an award of reasonable attorneys' fees in the event legal action is taken against a delinquent employer. The arbitrator's award of attorneys' fees clearly draws its essence from the collective bargaining agreement. As such, the award is enforceable. Moreover, as it is clear that the parties contracted to award attorneys' fees in the event legal action was brought against a delinquent employer, an award of attorneys' fees in this action is also appropriate.[7] *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (absent a statute or *contract* to the contrary, litigants pay their own attorneys' fees); *F. D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.,* 417 U.S. 116, 128–131, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 491 F.2d 192 (8th Cir. 1974).

The central issue here, the scope of coverage of the parties' agreements, is essentially a matter of construction of the contract. It is not for this Court to interfere with an arbitrator's determination where, as here, it cannot " 'be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation.' " *Kewanee Machinery Division, Chromalloy American Corp. v. Local Union No. 21, Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 593 F.2d 314 at 318 (8th Cir. 1979) *citing International Broth. of Elect. Wkrs. v. Prof. Hole,* 574 F.2d 497, 503 (10th Cir. 1978). As the other issues presented here involve questions of incorporation by reference, these issues were also properly before the arbitrator as a matter of contract interpretation. Thus, the arbitration award clearly draws its essence from the collective bargaining agreements. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1970). Finally, as the Court has found that a sufficient "written agreement" for purposes of Section 302(c)(5)(B) of the Labor Management

---

**6.** Nor do the affidavits filed by the plaintiff employers, relating to the parties' bargaining history, change the result.

**7.** In view of the Court's disposition of the attorneys' fees issue, it is not necessary to reach the question of whether these plaintiff employers are obligated to pay attorneys' fees because of their "bad faith."

Relations Act is present, there are no obstacles to the enforcement of this award.

Therefore, IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is denied. Furthermore, IT IS HEREBY ORDERED that defendant's motion for summary judgment be and hereby is granted. Also, IT IS HEREBY ORDERED that counsel for both parties confer as to a reasonable amount of attorneys' fees to be awarded defendant's counsel for purposes of this Section 301 proceeding. In the event that counsel for the parties cannot agree on such an award, defendant's counsel shall apply to the Court for an order regarding a reasonable attorneys' fee.