**TRUSTEES OF THE WASHINGTON
AREA CARPENTERS' PENSION
AND RETIREMENT FUND, et al.**

v.

**MERGENTIME CORPORATION, et al.**

No. WN–89–1420.

United States District Court,
D. Maryland.

July 17, 1990.

Louis P. Malone, III, O'Donoghue &
O'Donoghue, Washington, D.C., for plaintiffs.

Frank S. Astroth, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendants.

NICKERSON, District Judge.

This case was brought by the trustees of the Washington Area Carpenters' Pension and Retirement Fund, the Washington Area Carpenters' Welfare Fund, the Joint Carpentry Apprenticeship Committee of Washington, D.C. and Vicinity and the Industry Promotions Trust Fund ("Carpenters' Funds"), pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. §§ 1132(g) and 1145, and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Carpenters' Funds seek payment for unpaid contributions, interest, liquidated damages, costs, and attorneys' fees from defendants Mergentime Corporation ("Mergentime"), Mergentime/Perini ("Mergentime/Perini") and Mergentime/Morrison–Knudsen ("Mergentime/Morrison–Knudsen") because of

defendants' failure to make timely contributions to the employee funds.[1] Additionally, plaintiffs seek injunctive relief to prevent any future delinquencies. The Carpenters' Funds assert that the defendants are required, under the terms of collective bargaining agreements executed by the Carpenters' District Council of Washington, D.C. and vicinity and the Construction Contractors Council AGC Labor Division, Inc., to make timely contributions to the funds in accordance with the terms of a trust agreement to which the collective bargaining agreement refer. Since contributions for various months were untimely, plaintiffs contend they are entitled to liquidated damages as provided by the collective bargaining agreements and the trust agreements.

On March 16, 1990, plaintiffs moved for summary judgment.[2] (Paper Number 15). The parties have fully briefed the issues and supplied ample supporting documents. (Paper Numbers 15, 16, 18 and 19). Having carefully reviewed these filings, this Court finds that no hearing is necessary. Local Rule 105.6. For the reasons to be elaborated below, plaintiffs' motion for summary judgment shall be granted.[3]

In opposing the motion for summary judgment, defendants admit that at the time the complaint was originally filed a balance of $532.74 in contributions to the plaintiffs remained unpaid by Mergentime/Morrison–Knudsen for work performed during the period of September 1988 through January 1989, as alleged in Count I. Opposition at 11, 17 (Paper Num-

---

1. Count I of the complaint seeks recovery of *unpaid* contributions for the months of September, October, November and December 1988 and January 1989 in the amount of $523.74. Complaint at 4 (Paper Number 1). Count II seeks an award of "liquidated damages" against Mergentime Corporation for *untimely* contributions during the period of October 1987 through February 1989 and April 1989 through December 1989. Liquidated damages asserted against Mergentime/Perini are assessed on contributions that were untimely during the period of October 1987 through February 1989 and April 1989 through December 1989. The liquidated damages allegedly due from Mergentime/Morrison–Knudsen are assessed on contributions that were untimely during the period of April 1988 through February 1989 and April 1989 through June 1989. Motion for Summary Judgment at 7 n. 4 (Paper Number 15).

2. A settlement among the parties in this case was initially reached on January 12, 1990. This Court entered an order dismissing the case but allowed thirty days to reopen the action if settlement was not consummated. (Paper Number 11). Upon motion of the parties, the Court reopened the case on March 6, 1990. (Paper Number 14).

3. The standard applicable to motions for summary judgment is clear. Under Federal Rule of Civil Procedure 56, to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits on file, establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984); *Purity Products, Inc. v. Tropicana Products, Inc.*, 702 F.Supp. 564, 567 (D.Md.), *aff'd.*, 887 F.2d 1081 (4th Cir.1988); *Pfeifer v. Lever Bros.*, 693 F.Supp. 358, 362 (D.Md.1987), *aff'd.*, 850 F.2d 689 (4th Cir.1988). A party seeking summary judgment bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). The non-moving party must thereafter produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *White v. Rockingham Radiologists Ltd.*, 820 F.2d 98, 101 (4th Cir.1987).

The Supreme Court has emphasized that Rule 56 mandates the entry of summary judgment "after adequate time for discovery ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Thus, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2509–10. In making that analysis, the evidence and all justifiable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct 1598, 1609, 26 L.Ed.2d 142 (1970); *Gill v. Rollins Protective Services Co.*, 773 F.2d 592, 595 (4th Cir.), *reh'g. denied*, 788 F.2d 1042 (1985).

ber 16). Defendants additionally admit they currently owe the following amounts for *unpaid* contributions for the months indicated:

Mergentime Corporation for the period May 1988 through December 1989: $ 232.03

Mergentime/Perini for the period May 1988 through December 1989: $ 1,155.30

Total: $ 1,387.33

*Id.* at 11–12, 17. The total *unpaid* contribution liability that is admitted by the defendants amounts to $1,920.07.[4] Since no material fact remains in dispute, the Court shall grant plaintiffs' motion for summary judgment as to Count I in the amount of $1,920.07 with interest at a rate of 8.09% from the date each monthly contribution was due until paid. Pursuant to 28 U.S.C. § 1132(g)(2), plaintiffs are entitled to reasonable attorneys' fees in conjunction with this judgment. Plaintiffs shall file with the Court a petition demonstrating fees incurred in connection with Count I. Additionally, plaintiffs are entitled to an award of liquidated damages for the contributions that were unpaid.[5] 28 U.S.C. § 1132(g)(2)(C)(ii) (1985 Supp.1990). Twenty percent of $1,920.07 equals $384.01 and judgment shall be individually entered accordingly.

As to Count II, "defendants admit that they failed to make timely contributions to the Carpenters' Funds during many of the months since October 1987, and agree with plaintiffs that *if* they are obligated to pay

liquidated damages by contract or statute, the liquidated damages owed would be as follows:

Mergentime Corporation liquidated damages through December 1989 $16,298.80

Mergentime/Perini liquidated damages through December 1989 $30,873.59

Mergentime/Morrison–Knudsen liquidated damages through June 1989 $ 562.44

Total: $47,734.83".

Opposition at 11 (emphasis supplied) (Paper Number 16). Defendants, however, dispute that they are liable for liquidated damages.[6]

Defendants present two arguments. First, since the collective bargaining agreements provide the obligation to pay liquidated damages, defendants submit they must be "signatories" to the agreements before they are obligated to pay any damages. Since no defendant signed the collective bargaining agreements or was required to become a "signatory" thereto, it is argued that no liability exists. Second, under § 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), defendants contend that contributions, including liquidated damages, must be made pursuant to a "written agreement." Since the only written agreements signed by the defendants do not "expressly incorporate" or "clearly refer" to the obligation to pay liquidated damages, defendants contend no such obligation exists. The Carpenters' Funds con-

---

4. To the extent that defendants' concession on Count I amends the complaint to include additional damages, this Court shall proceed as if Count I has been amended to include the additional admitted liability.

5. Defendants contest the validity of an award of liquidated damages under both Counts I and II. For the reasons explained below, this Court finds that plaintiffs are entitled to liquidated damages.

6. The liquidated damage clause at issue is contained in Article XIV, Section 10 of the collective bargaining agreements. Section 10 states: The Employer and the Union recognize and acknowledge that the regular and prompt payment of those payments required by Section 1, 2, and 4 above, Section 2 of Article V above and Section 13 of Article XX below, are essen-

tial and that it would be extremely difficult, if not impracticable, to fix the actual expenses and damage to the Funds, to the Union and the employees which would result from the failure of the Employer to make such payments within the time provided. Therefore, the amount of damage resulting from each and every such failure shall be presumed to be the sum of $20.00 per delinquency or 10% of the amount of the payment due, whichever is greater, which amount shall be come due and payable as liquidated damages, not as a penalty, upon the day immediately following the date on which the payment became delinquent and shall be in addition to said delinquent payment.

Opposition—Exhibit 12 at 62 (Paper Number 16).

tend that the writings at issue in this case meet the requirements of § 302. Additionally, plaintiffs argue that the Mergentime corporations' course of conduct evidences an intent to be bound by the terms of the collective bargaining agreements.

■ Section 302 of the Labor Management Relations Act prohibits employers from making payments to representatives of employees unless the payments fall within one of the statutory exceptions. One exception, § 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B) (1978 Supp.1990), allows an employer to make contributions to a trust fund established for the benefit of the employees only if the obligation to contribute is specified in a *written agreement*.[7] *Merrimen v. Paul F. Rost Elec., Inc.*, 861 F.2d 135, 137 (6th Cir.1988); *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1263 (9th Cir.1984); *Landy Packing Co. v. Amalgamated Meat Cutters & Food Handlers of North America, AFL–CIO, District Local 653–653A*, 471 F.Supp. 1218, 1221 (D.Minn. 1979). Employers are not required to be "signatories" to the actual trust agreement. The only requirement is that there be a "written agreement" detailing the basis for payments. *Landy Packing*, 471 F.Supp. at 1222 *citing Mechanical Contractors Ass'n. v. Huico, Inc.*, 93 LRRM 2329 (W.D.Wash.1976). Where there is a lack of signature on the actual trust agreement or collective bargaining agreement, courts interpreting § 302 follow two approaches. Some courts require "strict compliance" with the written agreement requirement demanding specific incorporation of the relevant trust agreement into the writing at issue. *Merrimen*, 861 F.2d at 137 *citing Central States Southeast &*

*Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1111 n. 6 (6th Cir.1986), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987); *Bricklayers Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir.1975). Other courts do not require explicit incorporation, but do require a "clear reference" to the trust agreement. *Paddack*, 745 F.2d at 1263 *citing Alvares v. Erickson*, 514 F.2d 156, 161 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); *Hinson v. NLRB*, 428 F.2d 133, 139 (8th Cir.1970). Absent a "writing" incorporating a trust agreement or collective bargaining agreement, the courts are split over whether the "adoption by conduct" theory is sufficient to satisfy § 302. *See e.g. Merrimen*, 861 F.2d at 139 (rejecting an "adoption by conduct" argument where employer did not sign any document assenting to the labor agreements); *Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1520 n. 13 (9th Cir.1985) (noting that "an adoption by conduct theory does not appear to violate the language or purpose" of § 302(c)(5)(B)). The Fourth Circuit Court of Appeals has not addressed these specific issues.[8]

■ Defendants' relationship with Carpenters' Funds began when they each entered into various construction project agreements ("project agreement") with the National Joint Heavy & Highway Construction Committee in conjunction with several signatory local unions including the Washington, D.C. and vicinity District Council of Carpenters.[9] Each agreement contains

---

7. Section 302(c) states, in pertinent part, that the general prohibition on contributions:
 shall not be applicable ... (5) with respect to money or other thing of value paid to a trust fund established by such [employee] representative, for the sole and exclusive benefit of the employee of such employer, and their families and dependents ... [p]rovided, [t]hat ... (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer.
 18 U.S.C. § 186(c) (1978 Supp.1990).

8. The Fourth Circuit in *Sinai Hosp. of Baltimore v. National Benefit Fund for Hospital & Health*

*Care Employees*, 697 F.2d 562, 568 (4th Cir.1982) recognized that § 302(c)(5)(B) contains a "specificity requirement." The Court, however, did not address the specific questions at issue in this case.

9. On July 6, 1987, Mergentime Corporation, as the general contractor for the "Navy Yard Station" project, entered into a project agreement. Opposition at 2, Exhibit 1 (Paper Number 16). On November 5, 1985, Mergentime/Perini entered into a project agreement for the "Shaw Station and Tunnels" project. *Id.* at 3—Exhibit 4. On May 1, 1986, Mergentime/Perini entered

standard language and provides, in pertinent part:

"[Any] contractor signatory to ... [this] ... Project Agreement also agrees to become signatory to the following Local Union agreements for ... [this specific project] ... only:

2. The Current agreement between Construction Contractors Council—AGC Labor Division, Inc. and Carpenters District Council of Washington, D.C. and Vicinity ..."

Opposition at 2, Exhibits 1, 4, 7 and 10 (Paper Number 16). Immediately following the signing of the project agreements, the defendants and the union signed a "clarification letter" ("Clarification letter"). Paragraph 1 of the letter states:

Although Contractor will not become signatory to the Local Union Agreements referred to in Project Agreement, it agrees to follow the applicable terms and conditions of employment for work contained in each of those local Agreements, unless such terms and conditions are superseded by, or inconsistent, with any terms and conditions contained in the Project Agreement or this Clarification Letter.

*Id.* at 2, Exhibits 2, 5, 8, and 11. Defendants maintain that the operative language of the clarification letters undisputedly establish that they were not signatories to the Carpenters local bargaining agreements referred to in the project agreements.[10] The only portion of the local bargaining agreements that defendants maintain are binding upon them are those "applicable [to the] terms and conditions of employment for work" as stated in the clarification letters. "It is the position of the defendants that the plain language of the phrase 'agrees to follow the terms and conditions of employment for work' refers only to those terms and conditions of employment relating to work which consists of such work-related subjects such as 'hours of work, overtime and holidays' covered by Article VII [of the collective bargaining agreement], 'foremen and general foremen' covered by Article IX, the employment of apprentices covered by Article XI and the 'general working rules and regulations' covered by Article XII." Opposition at 15 (Paper Number 16). Thus, defendants contend that the limiting language of the clarification letters did not obligate the defendants to pay liquidated damages, interest, attorneys' fees or costs in the event that contribution payments were late. Furthermore, the project agreements and clarification letters do not "explicitly incorporate" the provision of the bargaining agreement relating to the trust fund contributions. Thus, since no written agreement in compliance with LMRA § 302 exists, no liability for liquidated damages exists.

The Carpenters' Funds do not dispute the fact that the local agreements were not signed by the defendants. Nevertheless, plaintiffs argue that the obligation to make contributions, including damages for delinquent payments, flows from the defendants' signature on both the project agreements and the letters of clarification. "[T]he duty to contribute to the funds includes such obligations as the identity of the funds to which contributions are to be made, the due date for contributions, whether contributions are to be made, as well as penalties for failure to make contributions." Reply of Plaintiffs to Opposition at 3 (Paper Number 18). Additionally, it is asserted that past voluntary payments of liquidated damages by the defendants sup-

into a project agreement as general contractor for the "U" Street Station and Line project. *Id.* at 4—Exhibit 7. On July 6, 1987, Mergentime/Morrison–Knudsen entered into a project agreement as general contractor for the "Navy Yard East Tunnels" project. *Id.* at 6—Exhibit 10. Each project agreement contains substantially the same language.

10. The collective bargaining agreements to which the project agreements refer are: (1) the

Agreement between Construction Contractors Council—AGC Labor Division, Inc. and Carpenter's District Council Washington, D.C. and Vicinity—effective May 1, 1988 to April 30, 1991 and (2) the Agreement between Construction Contractors Council—AGC Labor Division, Inc. and Carpenter's District Council Washington, D.C. and Vicinity—effective May 1, 1986 to April 30, 1988. Opposition—Exhibits 12 and 13 (Paper Number 16).

ports the Carpenters' Funds' interpretation of the project agreement as requiring the payment of liquidated damages on untimely contributions.

The determinative issue in this matter is whether the defendants' signature on the project agreements and clarification letters combined with past conduct of paying liquidated damages satisfies the requirements of § 302. The two factors critical to the determination of whether § 302 has been complied with are: (1) whether there is a writing that clearly refers to the collective bargaining agreements and (2) whether the conduct of the defendants in paying past contributions and liquidated damages evidences an intent to be bound by the collective bargaining agreements despite the lack of a written assent. Viewing the record in this case in a light most favorable to the defendants, this Court concludes that the Mergentime companies are bound by the liquidated damages clause in the local bargaining agreements.

Defendants do not dispute that they signed documents that "clearly refer" to the collective bargaining agreements. However, it is disputed that the signed documents (the project agreements and clarification letters) specifically incorporate the terms of the trust agreements adopted by the collective bargaining agreements. Defendants rely on *Merrimen* as establishing that specific incorporation is a prerequisite for meeting the requirement of § 302. This Court finds that the "specific incorporation" approach is a too literal standard under § 302.[11] It is sufficient that the writing "clearly refers" to the obligation at issue.[12]

Defendants who admit they are bound by the collective bargaining agreements, however, argue that they are bound only by selective parts of the agreements. In admitting liability for unpaid contributions, defendants cannot deny that they agreed to the terms of the collective bargaining agreements which required payments to the trust funds. Neither do the defendants dispute that they are bound by the portion of the collective bargaining agreements detailing the "terms and conditions of employment for work." Additionally, defendants concede that they are bound by the wage rates for contributions that are established in the collective bargaining agreements.[13] Ironically, the only portion of the collective bargaining agreements and trust agreements that defendants argue is nonbinding is Article XIV, Section 10 relating to the payment of liquidated damages. *See infra* note 6. This Court concludes that the project agreements and the clarification letters are sufficient under § 302 as writings that clearly refer to the "basis on which [trust] payments are to be made."

Further supporting this Court's conclusion is that defendants' own course of conduct exhibits a clear intent to be bound by the liquidated damages provision. In the Court's opinion, an employer's conduct is relevant to the issue of whether § 302 has been complied with. *See e.g. Arizona La-*

---

**11.** The *Merrimen* court stated:

This Court is aware that a literal construction of section 302(C)(5)(B) effectively forces pension funds, which are third-party beneficiaries of labor agreements, to be more vigilant as to the formalities of execution than are the parties to those agreements. However, what disparity may exist in this regard derives from the express and unmistakable terms of Congress' mandate.

*Merrimen,* 861 F.2d at 139. This Court does not agree that § 302 requires such a literal application.

**12.** In this case, both the project agreements and the clarification letters refer to the collective bargaining agreements. Those agreements, in turn, incorporate by reference the provisions of the trust agreements.

**13.** The project agreements entered into by the defendants contain a specific section on "wages and fringes". That section reads:

The wage rates and fringe benefit contributions shall be those as set forth in the U.S. Department of Labor, Decision No. DC86–1, its successor number, or modifications thereto as included in the specifications, or the current wage rates and fringe benefit contributions *provided in the local agreements whichever is greater.* These rates shall remain in effect for the duration of the project. There will be no premium or hazard pay for any work on the job.

Opposition—Exhibit 1 at 9 (Paper Number 16). It is clear that the defendants could possibly have been bound by the wage rate as set forth in the project agreements.

*borers,* 753 F.2d at 1520 n. 13. The undisputed affidavit of David E. Menter, the general manager of the third party administrator the Carpenters' Funds, establishes that defendants paid liquidated damages at various times during the initial period of the construction contracts. Reply of Plaintiffs to Opposition—Exhibit 1 (Paper Number 18). Further, defendants admitted liability under Count I evidences their continued obligation to make trust fund contributions.[14] This conduct reflects an intent on the part of the defendants to be bound by the collective bargaining agreements.

Since the project agreement and clarification letters sufficiently refer to the collective bargaining agreements' provisions relating to trust fund contributions and the defendants' course of conduct exhibits a specific intention to be bound by the terms collective bargaining agreements, this Court concludes that the defendants are liable for liquidated damages. Accordingly, judgment shall be entered in favor the Carpenters' Funds on Count II in the amount of $47,734.83.

 The final relief sought by the complaint is a request for a permanent injunction enjoining defendant from any future contribution delinquencies. The Court's discretionary authority to grant injunctive relief is well established under ERISA. *See* 29 U.S.C. § 1132(a)(3). Several courts have resorted to injunctive relief when it has been perceived as necessary to protect the rights of fund participants and beneficiaries. *See Laborer's Fringe Benefit Funds–Detroit and Vicinity v. Northwest Concrete and Construction, Inc.,* 640 F.2d 1350 (6th Cir.1981); *D.C. Paving Industry Trust v. Jones & Artis, Inc.,* 2 EBC 2227, 2233 (D.D.C.1981). Carefully reviewing the record in this case, this Court determines that no irreparable injury will result if injunctive relief is not granted. Defendants admit their obligation to continued payments of fund contributions by their concession on Count I. This Court's find-

ing that defendants are bound by the terms of the collective bargaining agreement concretely establishes that defendants must continue to submit timely contributions or face liquidated damages. The past failure to submit timely contributions, in this Court's opinion, is not sufficient to justify a permanent injunction in this case. Accordingly, plaintiffs' request for injunctive relief shall be denied.

A separate order shall be entered.

### ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 17th day of July, 1990, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiffs' motion for summary judgment is GRANTED;

2. That judgment on Count I of the complaint is entered in favor of plaintiffs the trustees of the Washington Area Carpenters' Pension and Retirement Fund, the Washington Area Carpenters' Welfare Fund, the Joint Carpentry Apprenticeship Committee of Washington, D.C. and Vicinity and the Industry Promotions Trust Fund in the amount of $278.43, including liquidated damages, against defendant Mergentime Corporation; in the amount of $639.29, including liquidated damages, against defendant Mergentime/Morrison–Knudsen; and in the amount of $1,386.36, including liquidated damages, against defendant Mergentime/Perini;

3. That interest on the judgment in Count I shall accrue at a rate of 8.09% from the date each monthly contribution was due until paid;

4. That counsel for the Carpenters' Funds shall submit to this Court, within 20 days, a fee petition for all work performed relating to Count I of the complaint;

5. That judgment on Count II of the complaint is entered in favor of plaintiffs

---

**14.** The Court notes that if defendants' arguments concerning the lack of compliance with § 302 are taken to a logical conclusion, any contribution, including those defendants' admit are owing under Count I, would be illegal. A violation of section 302 makes an employer's contributions to employee groups illegal. *Merrimen,* 861 F.2d at 137; *Bricklayers Local 15,* 512 F.2d at 1017.

the trustees of the Washington Area Carpenters' Pension and Retirement Fund, the Washington Area Carpenters' Welfare Fund, the Joint Carpentry Apprenticeship Committee of Washington, D.C. and Vicinity and the Industry Promotions Trust Fund in the amount of $16,298.80, representing liquidated damages, against defendant Mergentime Corporation; in the amount of $562.44, representing liquidated damages, against defendant Mergentime/Morrison–Knudsen; and in the amount of $30,873.59, representing liquidated damages, against defendant Mergentime/Perini;

6. That the Carpenters' Funds request for permanent injunction is DENIED;

7. That the Clerk of Court shall enter this case as CLOSED on the docket.